**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA; and FARMWORKER LEGAL AID CLINIC, | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civil Action No. 20-2363 |
| UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, | : : : | |
| Defendant. | : : | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.      The American Civil Liberties Union of Pennsylvania and the Farmworker Legal Aid Clinic (collectively "Plaintiffs") bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq., to obtain injunctive and other appropriate relief requiring United States Immigration and Customs Enforcement ("ICE") to respond properly to a FOIA request sent by Plaintiffs on August 7, 2019 ("Request"), and to promptly disclose the requested records.

2.      The Request seeks records concerning Defendant's local immigration enforcement in Pennsylvania, Delaware, and West Virginia. Specifically, the Request seeks all Form I-213s ("Record of Deportable/Inadmissible Alien") prepared by any agent or employee under the supervision of the Philadelphia Field Office, including all sub-offices, between January 1, 2017 and the present. A copy of Plaintiffs' initial FOIA request is attached as Exhibit A.

3.      The requested records contain information of great public importance, especially in light of Defendant's aggressive enforcement actions under the current presidential administration. Increased immigration enforcement and the fear of deportation has deterred many immigrants from reporting crimes, participating in court proceedings, seeking necessary health care, attending church, or even traveling to the grocery store to purchase food.[1] The public has a right to know about the Defendant's local enforcement operations, including their tactics and how they conduct collateral arrests.

4.      This action is necessary because it has been eight months since the Plaintiffs submitted their initial Request. Despite Defendant having had multiple opportunities to comply with the Freedom of Information Act, Defendant has repeatedly failed to comply with their responsibilities under FOIA.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and (6)(E)(iii). This court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346(a)(2).

6.      Venue in the Eastern District of Pennsylvania is proper under 5 U.S.C. § 552(a)(4)(B) because the Plaintiffs' principal place of business is in the District and a substantial portion of the withheld records relate to immigration enforcement in Pennsylvania. For the same reasons, venue is also proper under 28 U.S.C. §§ 1391(e) and 1402(a).

---

[1] *See, e.g.*, *New ACLU Report Shows Fear of Deportation is Deterring Immigrants from Reporting Crimes*, Am. Civil Liberties Union (May 3, 2018), https://www.aclu.org/press-releases/new-aclu-report-shows-fear-deportation-deterring-immigrants-reporting-crimes; Vivian Yee, *Immigrants Hide, Fearing Capture on 'Any Corner,'* N.Y. TIMES (Feb. 22, 2017), https://www.nytimes.com/2017/02/22/us/immigrants-deportation-fears.html; Erica Hellerstein, *In Santa Cruz County, a Clandestine Food Bank Draws Hundreds of Farmworkers*, MERCURY NEWS (Aug. 24, 2019), https://www.mercurynews.com/2019/08/24/californias-underground-food-bank/.

## PARTIES

7.     Plaintiff American Civil Liberties Union of Pennsylvania ("ACLU-PA") is a nonprofit 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases and works to advance civil rights and civil liberties' protections through various forms of advocacy and public education across the Commonwealth. ACLU-PA has offices in Philadelphia, Harrisburg, and Pittsburgh.

8.     Plaintiff Farmworker Legal Aid Clinic ("FLAC") is a law school clinical program located within the Villanova University Charles Widger School of Law. FLAC provides free legal representation to low wage immigrant workers and their families who live and work throughout Pennsylvania. Along with representing low-income workers, FLAC provides legal support for organizations working to empower immigrant workers and end the systematic injustices impacting immigrant communities.

9.     Defendant ICE is a sub-agency within the Department of Homeland Security ("DHS"). ICE is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). ICE has possession, custody, and control over the records requested by Plaintiffs.

## FACTS

### I.     Public Concern with Defendant's Immigration Enforcement

10.     The Request arises from widespread public interest in civil immigration enforcement in Pennsylvania since 2017. The current administration greatly expanded civil immigration enforcement through an executive order issued in January 2017 and a DHS memorandum issued in February 2017. The executive order expanded enforcement priorities so extensively that, while it did not purport to eliminate all enforcement priorities, it effectively did. This order, coupled with the DHS memorandum that rescinded prior guidelines authorizing

immigration officers to exercise discretion and not detain or seek removal in particular circumstances, has empowered ICE to arrest individuals at a much higher rate while also intensifying its tactics in conducting arrests.

11.     After these orders, the Philadelphia Field Office, which oversees civil immigration enforcement for Pennsylvania, Delaware and West Virginia, ramped up its enforcement efforts.[2] Although Pennsylvania's undocumented population ranked sixteenth in the country in 2017, the Philadelphia regional ICE office arrested more immigrants without criminal convictions than any of the other twenty-three ICE offices in the United States.[3] Moreover, in 2017, data revealed that 64% of the immigrants that ICE arrested in Pennsylvania, West Virginia, and Delaware, had no criminal convictions, compared to 38% in the country as a whole.[4]

12.     According to the Transactional Records Access Clearinghouse ("TRAC"), an online source that offers "comprehensive, independent and nonpartisan information about U.S. federal immigration enforcement," there were a total of 3,003 arrests in 2016, 4,137 arrests in all of 2017 and 2,995 arrests just from January 2018 to May 2018 in Pennsylvania.[5]

13.     This increase in the volume and scope of the Philadelphia Field Office's enforcement activities has been the subject of numerous reports by local and national news outlets.[6]

---

[2] Deborah Sontag & Dale Russakoff, *In Pennsylvania, It's Open Season on Undocumented Immigrants*, PROPUBLICA (Apr. 12, 2018), https://www.propublica.org/article/pennsylvania-ice-undocumented-immigrants-immigration-enforcement.
[3] *Id*.
[4] *Id*.
[5] *Immigration and Customs Enforcement Arrests ICE Data through May 2018*, TRAC Reports, Inc., https://trac.syr.edu/phptools/immigration/arrest/ (last accessed Feb. 10, 2020).
[6] *See, e.g.*, Deborah Sontag & Dale Russakoff, *In Pennsylvania, It's Open Season on Undocumented Immigrants*, PROPUBLICA (Apr. 12, 2018), https://www.propublica.org/article/pennsylvania-ice-undocumented-immigrants-immigration-enforcement; Brian X. McCrone, *ICE Targets Van Full of Workers in Reading, Berks County, Detaining Numerous Undocumented Immigrants,* NBC10 (Apr. 7, 2017),

14.     Pennsylvania's steep increase in civil immigration enforcement has attracted attention and elevated public concern.

15.     In one incident, witnesses reported that ICE officers raided a Pennsylvania poultry transport company and "lined up Latinos for questioning and asked white employees to lead them to more Latino workers."[7] Other practices have included pulling over vans of Latino workers.[8] Other reports have documented instances in which some Pennsylvania state troopers and local police, who are not authorized to enforce civil immigration laws, have collaborated with ICE officers to target immigrants based on their race and ethnicity.[9]

16.     According to an investigation by ProPublica and *The Philadelphia Inquirer*, ICE officers operating under the supervision of the Philadelphia Field Office have utilized tactics that have "skirted the law."[10] These tactics include: routinely arresting immigrants encountered by chance during targeted operations, known as "collateral arrests;" informally expanding the definition of categories related to criminality to include immigrants who have traffic tickets or commit infractions too minor to qualify as misdemeanors; or occasionally "stepp[ing] over the

---

https://www.nbcphiladelphia.com/news/local/ice-targets-vans-full-of-workers-in-reading-berks-county-detaining-numerous-undocumented-workers/11937/; Michael Matza, *248 Foreign Nationals Apprehended in Pa., Del., N.J., W.Va., in Two-Week Sweep by ICE,* PHILADELPHIA INQUIRER (Mar. 13, 2017),
https://www.inquirer.com/philly/news/248-foreign-nationals-apprehended-in-Pa-Del-W-Va-in-two-week-sweep-by-ICE.html.
[7] Kavitha Surana, *How Racial Profiling Goes Unchecked in Immigration Enforcement*, PROPUBLICA (June 8, 2018), https://www.propublica.org/article/racial-profiling-ice-immigration-enforcement-pennsylvania.
[8] Deborah Sontag & Dale Russakoff, *In Pennsylvania, It's Open Season on Undocumented Immigrants*, PROPUBLICA (Apr. 12, 2018), https://www.propublica.org/article/pennsylvania-ice-undocumented-immigrants-immigration-enforcement.
[9] Dale Russakoff & Deborah Sontag, *For Cops Who Want to Help ICE Crack Down on Illegal Immigration, Pennsylvania Is a Free-for-All*, PROPUBLICA (Apr. 12, 2018), https://www.propublica.org/article/pennsylvania-immigration-ice-crackdown-cops-free-for-all.
[10] Deborah Sontag & Dale Russakoff, *In Pennsylvania, It's Open Season on Undocumented Immigrants*, PROPUBLICA (Apr. 12, 2018), https://www.propublica.org/article/pennsylvania-ice-undocumented-immigrants-immigration-enforcement.

5

legal line themselves" by trespassing, conducting warrantless searches, engaging in racial profiling, fabricating evidence, and soliciting bribes.[11]

17.     In addition, ICE officers throughout Pennsylvania have arrested immigrants in and around courthouses.[12] A report issued in 2019 by the Center for Social Justice at Temple University's Beasley School of Law found that courthouse personnel collaborated with ICE in thirteen counties throughout Pennsylvania.[13] In Philadelphia County, lawyers reported witnessing ICE officers arresting immigrants around and inside the Family Court and the Criminal Justice Center.[14] These trends have a chilling effect on the immigrant community causing them to avoid courts out of fear of deportation, thus undermining judicial independence and integrity.[15] In April 2019, in recognition of the problem, ICE authorities agreed to stop making arrests inside Philadelphia courthouses.[16] However, ICE officers can and are still arresting immigrants immediately outside of Philadelphia courthouses.

18.     Despite these reports, ICE provides little public information about the basis for their enforcement actions and the tactics used by officers making immigration arrests.[17] A report conducted by the University of Washington Center for Human Rights notes how ICE and Customs and Boarder Protection ("CBP"), the two primary sub-agencies of DHS, often make it

---

[11] *Id.*

[12] Patrick Gordon, Kelley Grady & Shaqueil Stephenson, Ctr. for Soc. Justice, Temple Univ. Beasley Sch. of Law, *Obstructing Justice: The Chilling Effect of ICE's Arrests of Immigrants at Pennsylvania Courthouses* (Jan. 30, 2019).

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] Jeff Gammage, *ICE to Cease Arrests in Philly Courthouses, Agree to New Rules of Conduct, says Sheriff's Department*, PHILADELPHIA INQUIRER (Apr. 5, 2019), https://www.inquirer.com/news/ice-immigration-immigrants-courts-arrests-sheriffs-department-20190405.html.

[17] Deborah Sontag & Dale Russakoff, *In Pennsylvania, It's Open Season on Undocumented Immigrants*, PROPUBLICA (Apr. 12, 2018), https://www.propublica.org/article/pennsylvania-ice-undocumented-immigrants-immigration-enforcement.

difficult for the public to obtain information about immigrant enforcement activities.[18]
Specifically, ICE and CBP have been known to engage in "anti-transparency practices" and
"routinely seek to conceal knowledge of their operations from the public."[19]

19.     To facilitate the public's understanding of these reports and incidents, Plaintiffs'
Request seeks to shed light on the nature of these arrests. The "narrative portion" of the Form I-
213 is prepared by the arresting officers for each immigrant placed in removal proceedings and
often contains information related to the decision to arrest the immigrant and the details of the
arrest, which is why it is an important public record. Publicizing this information will enable the
public to better understand the Philadelphia Field Office's immigration enforcement tactics.

## II.     Plaintiffs' FOIA Request

20.     On August 7, 2019, Plaintiffs submitted their Request to ICE via electronic mail,
at ICE-FOIA@dhs.gov. *See* 6 C.F.R. § 5.3 (stating that all DHS components "have the capability
to receive requests electronically, either through email or a web portal.").

21.     The Request seeks "copies of all Form I-213s ("Record of
Deportable/Inadmissible Alien") prepared by any agent or employee under the supervision of the
Philadelphia Field Office, including all sub-offices, between January 1, 2017 and the present."
Exhibit A at 2.

22.     The Request includes an application for expedited processing, on the grounds that
there is a "compelling need" for the requested records under 6 C.F.R. § 5.5(e) and 5 U.S.C. §
552(a)(6)(E)(i).

---

[18] Univ. of Wash. Ctr. for Human Rights, *Secret Police: Access to Information about Immigration Enforcement in the United States* (Dec. 5, 2018), https://jsis.washington.edu/humanrights/2018/12/05/secret-police/.
[19] *Id.*

23.     Furthermore, the Request details that the ACLU is primarily engaged in disseminating information within the meaning of 5 U.S.C. § 552(a)(6)(E)(v), given that a critical and substantial aspect of the ACLU's mission is to obtain information about government activity, analyze that information, and publish and disseminate that information widely to the press and public. *Id.* at 3.

24.     The Request also includes an application for a fee waiver or limitation under 5 U.S.C. § 552(a)(4)(A)(iii) on the grounds that disclosure of the requested records is in the public interest and is "likely to contribute significantly to public understanding of the operations activities of the government and is not primarily in the commercial interest of the requester." *Id.* at 6. In particular, the ACLU emphasized that the Request would significantly contribute to public understanding on a matter of profound public importance about which scant specific information has been made public, *i.e.*, Defendant's local enforcement of immigration laws. *Id.* at 6-7. The Request also made it clear that the ACLU and FLAC plan to disseminate the information obtained from the Request to the public at no cost. *Id.*

25.     The Request applied for a waiver of search fees under 5 U.S.C. § 552(a)(4)(A)(ii)(II) on the grounds that Plaintiffs qualify as "representatives of the news media" and the records are not sought for commercial use, given the ACLU's non-profit mission and substantial activities to publish information for dissemination to the public, as discussed above. *Supra* ¶ 23.

**<u>Defendant's Response</u>**

26.     On August 8, 2019, ICE granted expedited processing.

27.     On August 27, 2019, ICE denied the Request, stating that because the records requested concerned multiple third parties, without "a release, death certificate, or public

8

justification for release, release of the requested records concerning a third party would result in

an unwarranted invasion of personal privacy in violation of the Privacy Act, 5 U.S.C. § 552a."

28.     Additionally, ICE stated that third-party records are generally exempt from

disclosure under "sections (b)(6) and (b)(7)(C) of the Freedom of Information Act, 5 U.S.C. §

552." A copy of the August 27, 2019 letter is attached as Exhibit B.

**Appeal**

29.     On September 17, 2019, Plaintiffs appealed ICE's denial of the Request ("the

Appeal"), arguing that the privacy provisions of both Acts cited in ICE's denial are not absolute

and must be weighed against the public interest in disclosure of the requested information.

30.     As explained in the Appeal, the Request *followed* multiple news reports of ICE's

legally questionable enforcement activities and as such, the public interest in access to the

requested information is exceedingly strong.

31.     Plaintiffs' Appeal also noted that federal courts have repeatedly ordered

government agencies to provide Form I-213s in response to FOIA requests.

32.     The Appeal requested that "DHS conduct an adequate search and disclose all

responsive records in an expeditious manner."

33.     Finally, the Appeal stated that pursuant to 5 U.S.C. § 552(a)(6)(A)(ii), DHS was

required to respond within 20 working days. A copy of the Plaintiffs' appeal is attached as

Exhibit C.

**ICE Response to Appeal**

34.     Defendant has a legal duty to determine whether to comply with an appeal within

twenty working days after receiving the appeal, and, if denying the appeal in whole or in part, to

notify the requester of that determination and of the provisions for judicial review. 5 U.S.C. § 552(a)(6)(A)(ii).

35.     DHS acknowledged receipt of the Appeal on September 17, 2019 in a letter sent by email. A copy of the September 17, 2019 letter is attached as Exhibit D.

36.     On October 16, 2019, ICE denied Plaintiffs' appeal and administratively closed the Request.

37.     In its letter, ICE stated "[a]fter a careful review of your FOIA request and the administrative history, ICE has determined that your request is unduly burdensome." ICE stated that any responsive records that may exist are located in A-files, which "must be manually searched as the agency has no way of electronically retrieving the signed I-213s forms." ICE estimated that it would have to manually search thousands of A-files, amounting to an unduly burdensome task. A copy of the October 16, 2019 letter is attached as Exhibit E.

38.     In denying the Request, ICE has withheld records contrary to the requirements of the FOIA statute and frustrated Plaintiffs' effort to collect information of public importance.

39.     Plaintiffs have exhausted administrative remedies against Defendant and seek judicial review under 5 U.S.C. § 552(a)(4)(B).

**III.    Ongoing Public Interest in Civil Immigration Enforcement in Pennsylvania**

40.     Since the Request was filed in August 2019, there continues to be strong public interest in the requested records regarding civil immigration enforcement in Pennsylvania.

41.     For instance, on February 11, 2020, ICE officers arrested and detained a pregnant woman dropping off her daughter to her school in South Philadelphia.[20] This arrest occurred

---

[20] Maddie Hanna, *Concern Rises Following ICE Arrest of Mother After she Dropped Off Child at South Philly School*, PHILADELPHIA INQUIRER (Feb. 18, 2020), https://www.inquirer.com/news/undocumented-immigrant-ice-arrest-school-philadelphia-kirkbride-elementary-20200218.html

despite ICE's own policy guidance, which directs officers to avoid arresting people at "sensitive locations," including areas at or near schools.[21]

42.    ICE has also continued to target and arrest people in previously safe locations like courthouses, pushing local county officials to take action. In early March, Northampton County Executive Lamon McClure issued an Executive Order banning ICE arrests of criminal defendants within Northampton County unless a warrant is first provided to the Sheriff and Jail.[22]

43.    In short, all available information paints a concerning picture of Defendant's local immigration operations. The public has a right to know the true scope of those operations.

44.    The public interest in the requested information is particularly high given recent local and national news coverage scrutinizing the tactics of the Philadelphia Field Office and determination that some tactics have "skirted the law." [23] Disclosure of the requested records would facilitate the public's understanding of immigration enforcement across the region.

---

[21] Memorandum from David V. Aguilar, Deputy Comm'r, U.S. Customs & Border Prot., "U.S. Customs and Border Protection Enforcement Actions At or Near Certain Community Locations" (Jan. 18, 2013), https://foiarr.cbp.gov/docs/Policies_and_Procedures/2013/826326181_1251/1302211111_CBP_Enforcement _Actions_at_or_Near_Certain_Community_Locations_%7BSigned_M.pdf; Memorandum from John Morton, Dir., U.S. Immigration & Customs Enf't, "Enforcement Actions at or Focused on Sensitive Locations" (Oct. 24, 2011), https://www.ice.gov/doclib/ero-outreach/pdf/10029.2-policy.pdf.
[22] Cty. of Northampton, Exec. Order 20-28 (Mar. 3, 2020), https://www.northamptoncounty.org/CTYEXEC/Documents/0030320%20Executive%20Order%202020%2028.pdf.
[23] *See, e.g.*, Deborah Sontag & Dale Russakoff, *In Pennsylvania, It's Open Season on Undocumented Immigrants*, PROPUBLICA (Apr. 12, 2018), https://www.propublica.org/article/pennsylvania-ice-undocumented-immigrants-immigration-enforcement; Brian X. McCrone, *ICE Targets Van Full of Workers in Reading, Berks County, Detaining Numerous Undocumented Immigrants,* NBC10 (Apr. 7, 2017), https://www.nbcphiladelphia.com/news/local/ice-targets-vans-full-of-workers-in-reading-berks-county-detaining-numerous-undocumented-workers/11937/; Michael Matza, *248 Foreign Nationals Apprehended in Pa., Del., N.J., W.Va., in Two-Week Sweep by ICE,* PHILADELPHIA INQUIRER (Mar. 13, 2017), https://www.inquirer.com/philly/news/248-foreign-nationals-apprehended-in-Pa-Del-W-Va-in-two-week-sweep-by-ICE.html.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

### Violation of FOIA for Failure to Disclose Records Responsive to Plaintiffs' Request

45.     Plaintiffs repeat, re-allege and incorporate the allegations in the foregoing

paragraphs as though fully set forth herein.

46.     Defendant has unlawfully withheld records requested by Plaintiffs pursuant to 5

U.S.C. § 552.

47.     Defendant was obligated under 5 U.S.C. § 552(a)(3) to conduct a reasonable

search for records responsive to Plaintiffs' requests and to issue a determination concerning

Plaintiffs' requests within the time period set forth in 5 U.S.C. § 552(a)(6)—twenty working

days, to be extended by no more than 10 working days in the event that the agency finds the

existence of "unusual circumstances."

48.     Defendant has failed to make a reasonable effort to search for records sought by

the Request, and that failure violates FOIA, 5 U.S.C. § 552(a)(3) and Defendant's corresponding

regulations, *see* 6 C.F.R. § 5.4

49.     Defendant has failed to promptly make available the records sought by the

Request and that violates FOIA, 5 U.S.C. § 522(a)(6)(A), and Defendant's corresponding

regulations, *see* 6 C.F.R. § 5.6.

50.     Defendant has violated 5 U.S.C. § 552(a)(3) by withholding disclosable records in

its possession that are not exempt from disclosure under 5 U.S.C. §§ 552(b)(6), 552(b)(7)(C),

552(b)(7)(E).

51.     On information and belief, Defendant currently has possession, custody, or

control of the requested records.

12

52.     By failing to adequately search for, disclose and release the requested records, Defendant has violated Plaintiffs' rights to agency records under 5 U.S.C. § 552.

## SECOND CLAIM FOR RELIEF

### Defendant Improperly Denied or Has Not
### Responded to Plaintiffs' Request for a Fee Waiver

53.     Plaintiffs repeat, re-allege, and incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

54.     Defendant ICE has not responded to Plaintiffs' request for a fee waiver for the August 2019 Request.

55.     Plaintiffs have exhausted their administrative remedies with request to a fee waiver from Defendant ICE for the August 2019 FOIA Request.

56.     Defendant has violated Plaintiffs' right to fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii) and 5 U.S.C. § 552(a)(4)(A)(ii)(II) and under Defendant's own regulations, 6 C.F.R. 5.11(k), for Plaintiffs' August FOIA request.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs pray that this Court:

1.      Assume jurisdiction over this matter;

2.      Declare that Defendant violated FOIA by unlawfully withholding the requested records and by failing to respond to or denying the request for a fee waiver;

3.      Order Defendant to immediately conduct a search of any and all responsive records to Plaintiffs' August 2019 FOIA Request and demonstrate that it employed search methods reasonably likely to lead to the discovery of records responsive to Plaintiffs' FOIA requests, including production of "FOIA Search Staffing Sheets" for all searchers;

4.       Enjoin Defendant from assessing fees or costs for the processing of the FOIA

Request;

5.       Award costs and reasonable attorneys' fees incurred in this action by Plaintiffs, as

provided by 5 U.S.C. § 552(a)(4)(E); and

6.       Grant such other relief as this Court may deem just and proper.


Dated: May 20, 2020                                    Respectfully submitted,


*/s/ Caitlin S. Barry*
Caitlin S. Barry (PA 205501)
**VILLANOVA UNIVERSITY**
**CHARLES WIDGER SCHOOL OF LAW**
299 N. Spring Mill Road
Villanova, PA 19085
T: 610-519-3216
E: caitlin.barry@law.villanova.edu

*/s/ John J. Grogan*
John J. Grogan (PA 72443)
David Nagdeman (PA 327652)
**LANGER, GROGAN, & DIVER P.C.**
1717 Arch Street, Suite 4020
Philadelphia, PA  19103
T: 215-320-5662
E: jgrogan@langergrogan.com
E: dnagdeman@langergrogan.com

*/s/ Witold J. Walczak*
Witold J. Walczak (PA 62976)
Vanessa L. Stine (PA 319569)
Muneeba S. Talukder (CA 326394)*
**AMERICAN CIVIL LIBERTIES UNION OF**
**PENNSYLVANIA**

247 Ft. Pitt Blvd., 2d Fl.
Pittsburgh, PA 15222
T:  412-681-7864
E:  vwalczak@aclupa.org

P.O. Box 60173
Philadelphia, PA 19102
T:  215-592-1513
E:  vstine@aclupa.org
E:  mtalukder@aclupa.org


*Petition for Permission to file pro hac vice forthcoming*